EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br><br> Hon. Iris L. Cancio González <br> Juez Superior | Certiorari <br><br> 2014 TSPR 21 <br><br> 190 DPR ____ |

Número del Caso: CC-2013-524

Fecha: 18 de febrero de 2014

Abogados del Peticionario:

        Lcdo. Harold Vicente
        Lcdo. Rubén Nigaglioni

Abogado de la Recurrida:

        Lcdo. José Raúl Cancio Bigas

Oficina de Administración de los Tribunales:

        Lcda. Cristina Guerra Cáceres
        Directora

Materia: Procedimientos disciplinarios contra jueces – Revisión de determinación de archivo de queja contra un miembro de la judicatura.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Hon. Iris L. Cancio González
     Juez Superior

CC-2013-524          Certiorari

Opinión del Tribunal emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 18 de febrero de 2014.

Mediante el recurso ante este Tribunal se solicita la revisión de una orden de archivo de una queja contra un miembro de la Rama Judicial. Como consecuencia, se cuestiona la facultad de este Tribunal para atender el reclamo de los quejosos. Ello, nos obliga a expresarnos con relación a la potestad que posee este Tribunal para revisar el archivo de una queja confirmada por el Juez Presidente o Jueza Presidenta.

A tenor con las facultades conferidas por la Constitución de Puerto Rico y las disposiciones de las Reglas de Disciplina Judicial, *infra*, resolvemos que un quejoso tiene acceso a solicitar que este Tribunal revise una

determinación de archivo de una queja contra un miembro de la judicatura.

I

El Sr. Fidel Alonso Vals, el Sr. Guillermo Nigaglioni y el Instituto de Banca y Comercio, Inc. (quejosos) presentaron una queja por alegadas violaciones a los Cánones de Ética Judicial contra la Hon. Iris L. Cancio González (Jueza Cancio González). En la queja sostienen que la Jueza Cancio González se negó a acatar un mandato de este Tribunal, por lo que alegan que este proceder confirma su prejuicio y parcialidad en contra de los comparecientes.[1] Aducen que la Jueza Cancio González no permitió presentar una reconvención por prescripción, a pesar de que esta Curia determinó que la misma procedía y que la acción por dolo no estaba prescrita.[2] A su vez, señalaron que la Jueza Cancio González tampoco permitió a

_____

[1] Las determinaciones judiciales están relacionadas con el caso Civil Núm. KAC2005-8109, FirstBank Puerto Rico v. Instituto de Banca y Comercio, Inc., et al. y el caso CC-2009-200 de este Tribunal.

[2] Sobre la determinación de la Jueza Cancio González, los quejosos acudieron ante el Tribunal de Apelaciones (KLAN20120839). El foro intermedio revocó al Tribunal de Primera Instancia mediante la sentencia del 30 de noviembre de 2012 en la que concluyó que el Tribunal de Primera Instancia no cumplió a cabalidad con el mandato de este Tribunal. El Foro Intermedio razonó que el asunto de prescripción estuvo ante la consideración de este Tribunal cuando atendió la posibilidad de una presentación de reconvención. Por tanto, el Foro Intermedio determinó que no se podía interpretar que el tema de prescripción no había sido expresa o implícitamente atendido al emitir el mandato. Por el contrario, concluyó que quedó manifiestamente analizado y resuelto que la causa de acción expresada en las alegaciones de la reconvención no estaba prescrita.

uno de los abogados de los quejosos terminar su argumentación en el caso. De igual forma, señalaron que ésta denegó una solicitud de prórroga e impuso $500 de sanción por incumplimiento a su orden. Sostienen que la negativa de la Jueza Cancio González a acatar lo resuelto por este Tribunal refleja que está actuando con pasión, prejuicio y parcialidad. Posteriormente, los quejosos suplementaron la queja presentada a los fines de alegar que la Jueza Cancio González tenía una relación de parentesco por afinidad con la hermana de uno de los representantes legales de la parte contraria a los quejosos. Además, cuestionaron la descalificación de abogados realizada por la Jueza Cancio González, las sanciones impuestas y que permitiera la representación legal de la otra parte, a pesar de que entienden existe un conflicto de intereses.

La queja presentada fue tramitada conforme a las Reglas de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B. La Directora de la Oficina de Administración de los Tribunales desestimó la queja presentada. Al así hacerlo, adujo que la determinación que la jueza hiciera sobre la descalificación de los abogados y la imposición de sanciones no está comprendida dentro del ámbito de los procesos disciplinarios. Éstas deben ser evaluadas como determinaciones judiciales para las cuales existen los procesos apelativos correspondientes. Por otra parte, la Directora de la Oficina de Administración de los

Tribunales determinó que las expresiones de la Jueza Cancio González durante los procesos demuestran que concedió amplia oportunidad al representante legal de los quejosos y empleó un tono adecuado y respetuoso. Con respecto a la alegación de afinidad, se concluyó que no existe parentesco dentro del cuarto grado de consanguinidad y que no existe ninguna evidencia que pusiera en entredicho su capacidad para ser imparcial.

Inconformes con la decisión, oportunamente los quejosos instaron una solicitud de reconsideración ante la Oficina de Administración de los Tribunales. Adujeron, que la Jueza Cancio González desobedeció el mandato de este Tribunal, según razonó el Tribunal de Apelaciones.

El 26 de febrero de 2013, la Directora de la Oficina de Administración de los Tribunales reiteró que no existía evidencia de que la Jueza Cancio González actuara movida por inclinaciones u opiniones personales. Entendió que ésta erró al no atenerse al mandato del Tribunal Supremo. Sin embargo, expresó que ello no equivale a actuar en menosprecio de la ley. Además, señaló que tampoco existe prueba de que el error cometido constituyó un abuso intencional de la discreción judicial ni es reflejo de una conducta impropia o favoritismo hacia algún litigante o abogado.

Ante tal conclusión, los quejosos solicitaron revisión ante el Juez Presidente del Tribunal Supremo conforme la Regla 9 de las Reglas de Disciplina Judicial,

4 L.P.R.A. Ap. XV-B R. 9. Los quejosos plantearon que la negativa de la Jueza Cancio González a acatar el mandato de este Tribunal constituye una violación ética por ser conducta negligente o incurrir en menosprecio de la ley. Posteriormente, suplementaron su solicitud de revisión para aducir que la Jueza Cancio González ha presentado conducta parcializada en contra de uno de los representantes legales.

La solicitud de revisión ante el Juez Presidente fue atendida por la Jueza Asociada señora Fiol Matta mediante resolución de 17 de junio de 2013.[3] Tras examinar la queja presentada y el expediente, la Jueza Asociada señora Fiol Matta concluyó que "no existe evidencia suficiente para iniciar un procedimiento.

En cuanto al parentesco alegado por los quejosos, la Jueza Asociada señora Fiol Matta señaló que no está dentro del cuarto grado de consanguinidad o afinidad y tampoco existe evidencia sobre vínculo alguno que ponga en entredicho la capacidad de imparcialidad. Con relación a los demás señalamientos, resaltó que, en su mayoría, la queja se refiere a "determinaciones judiciales tomadas por la jueza durante el trámite del caso", las cuales están excluidas del proceso disciplinario. Citó la consabida norma de que para que estas actuaciones constituyan una violación ética que justifique la

---

[3]Ello debido a la inhibición del Juez Presidente señor Hernández Denton.

destitución de un juez se debe demostrar que existió un abuso intencional de discreción o que el error es de tal magnitud que expuso un claro favoritismo o conducta impropia hacia una parte. Así, la Jueza Asociada señora Fiol Matta determinó que la "actuación de la jueza al desestimar la reconvención constituyó una interpretación del derecho revocada por el Tribunal de Apelaciones". Expresó que no existe evidencia que denote un abuso intencional de la discreción de la jueza, por lo que sus actuaciones no constituyen una violación ética que amerite el inicio de un procedimiento disciplinario en su contra.

En desacuerdo con tal proceder, los quejosos presentaron el recurso ante nuestra consideración. Señalaron que erró la Jueza Asociada señora Fiol Matta al determinar que la conducta de la Jueza Cancio González constituye un error de juicio o derecho que está dentro de su facultad judicial. Los quejosos sostienen que lo actuado por la Jueza Cancio González constituye un claro desacato al mandato expreso del Tribunal Supremo sobre la fecha en que comenzó a decursar el término prescriptivo. Así, nos solicitan que ordenemos el inicio del procedimiento disciplinario contra la Jueza Cancio González.

Con el beneficio de la comparecencia de la Jueza Cancio González y de la Oficina de la Administración de

los Tribunales, procedemos a atender el asunto ante nuestra consideración.

II

A.

Antes de entrar en los méritos del error señalado resulta necesario disponer de un asunto medular en cuanto a la jurisdicción de este Tribunal. Ese asunto fue traído ante nuestra atención por la Jueza Cancio González en su comparecencia.

La Jueza Cancio González cuestiona el que se presente un recurso de *certiorari* con el fin de revisar la determinación en reconsideración realizada por la Jueza Asociada señora Fiol Matta. A estos efectos, sostiene que el recurso de *certiorari* procede para que un tribunal superior revise un asunto atendido por un tribunal inferior. Por tanto, entiende que ese recurso no está disponible para atender los reclamos ante nuestra consideración. De igual forma, alude que las Reglas de Disciplina Judicial tampoco reconocen la presentación de un *certiorari* para revisar la determinación de archivo de una queja contra un juez. Por ende, alega que al no solicitarse la revisión de sentencias o resoluciones de foros inferiores, el recurso resulta improcedente en derecho y debe ser desestimado. No le asiste la razón. Veamos.

B.

Como es sabido, el comportamiento de los miembros de la Judicatura constituye uno de los pilares en los que se cimienta el Sistema Judicial. Por ello, se exige una conducta intachable para que éstos sirvan de ejemplo, fomenten el respeto y la confianza del pueblo en el Sistema Judicial. In re Claverol Siaca, 175 D.P.R. 177, 188 (2009). De esta forma, se preserva "la independencia judicial, la administración efectiva e imparcial de la justicia y **la confianza de la ciudadanía** en un sistema de justicia" lo que contribuye a afianzar y a consolidar las bases democráticas de nuestra sociedad. 4 L.P.R.A. Ap. IV-B I. A fin de cuentas, es la confianza de los ciudadanos lo realmente esencial para el funcionamiento y la efectividad de los tribunales, porque el respeto que la gente le tenga a las instituciones judiciales es lo que le brinda a éstas fuerza y autoridad. Lozada Sánchez v. JCA, 184 D.P.R. 898, 990 (2012). Cónsono con ello, hoy día la facultad para destituir los jueces que integran nuestro Sistema Judicial recae sobre este Tribunal. Ésta debe ser ejercitada siempre con gran celo.

En origen, el poder de destituir a los jueces recaía en el Gobernador por causa justificada. Los contornos para la destitución estuvieron delineados por un debido proceso de ley que reconocía a los jueces el derecho a ser notificados y poder defenderse antes de ser destituidos. Jiménez v. Reily, 30 D.P.R. 626 (1922).

Posteriormente, se delimitaron estatutariamente las razones por las cuales se podría destituir a un juez y, aunque el Gobernador ostentaba esa prerrogativa, se reconoció que debía hacerlo a recomendación de este Tribunal.[4] Véanse, In re Navarro Ortiz, 60 D.P.R. 485, 487 (1942); L.M. Negrón Portillo, Ética y Disciplina Judicial en Puerto Rico, 1987, pág. 13. No fue hasta la aprobación de la Ley Núm. 432 de 15 de mayo de 1950, Ley Orgánica de la Judicatura de Puerto Rico, que se inició la estructuración del sistema judicial en Puerto Rico. En lo que nos concierne, el Art. 40 de la Ley Núm. 432 proveía el procedimiento para la destitución de los jueces de distrito por el Gobernador, siempre y cuando este Tribunal así lo recomendaba, conforme al procedimiento establecido en la Ley Núm. 58 de 29 de abril de 1930. Véase, 4 L.P.R.A. sec. 25n nota.

A pesar de ello, con el avance e impacto que conllevó la aprobación de nuestra Constitución en el 1952 se estructuró una reforma judicial de avanzada.[5] En lo

---

[4]La Sec. 3 de la Ley Núm. 58 de 29 de abril de 1930 disponía que cualquiera de los jueces de distrito de la Isla a quien se acusare de "haber incurrido en prevaricación, soborno, conducta inmoral, negligencia inexcusable o ineptitud manifiesta para el desempeño de sus funciones, deberá ser destituido por el Gobernador de Puerto Rico a recomendación del Tribunal Supremo".

[5]Para una discusión detallada sobre el alcance de la reforma judicial de 1952; véase: Clark & Rogers, The New Judiciary Act Of Puerto Rico: A Definitive Court Reorganization, 61 Yale L.J. 1147 (1952).

pertinente, el Art. V, Sec. 11 de la Constitución de Puerto Rico, L.P.R.A. Tomo 1, dispone que:

> Los jueces del Tribunal Supremo podrán ser destituidos por las causas y mediante el procedimiento que esta Constitución establece en la Sección 21 del Artículo III. **Los jueces de los demás tribunales podrán ser destituidos por el Tribunal Supremo por las causas y mediante el procedimiento que se disponga por ley**. (Énfasis suplido y subrayado nuestro). Const. E.L.A., L.P.R.A. Tomo 1.

Como consecuencia, la transcrita disposición constitucional confirió, en su totalidad, **a este Tribunal** el poder de destituir los jueces de los "demás tribunales". Con ello, se constituyó un cambio radical a la facultad reconocida en el Gobernador para la destitución de los jueces con la recomendación de este Tribunal. De esta forma, se convirtió el procedimiento de destitución de jueces en uno estrictamente judicial. Véase, Negrón Portillo, *supra*, pág. 17.

Ahora bien, las razones y el procedimiento para la destitución de los jueces quedaron encomendadas a la Rama Legislativa. Como consecuencia de tal deber, la Asamblea Legislativa aprobó la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, Ley Núm. 11 de 24 de julio de 1952, 4 L.P.R.A. sec. 1, *et seq*. Mediante la Sec. 24 de ésta, se establecieron unas pautas generales del procedimiento a seguirse. Específicamente, la Sec. 24 (4 L.P.R.A. sec. 232) disponía el procedimiento para la destitución de los jueces de la siguiente forma:

> Cualesquiera cargos que se formularen contra cualquier juez del Tribunal de Primera

Instancia serán presentados ante el Director Administrativo de la Oficina de Administración de los Tribunales, quien informará de ello al Juez Presidente, **y si el Tribunal Supremo así lo desea, recomendará la acción ulterior a tomarse o el archivo de los cargos**. El Tribunal Supremo ordenará que se practique la investigación que creyere conveniente y podrá solicitar del Secretario de Justicia que practique tal investigación y rinda un informe al Tribunal.

Si el Tribunal Supremo determinare que existe causa para ulteriores procedimientos, podrá solicitar del Secretario de Justicia o de cualquier funcionario del Tribunal que radique la correspondiente querella. El Secretario de Justicia también, a iniciativa propia, o por orden del Gobernador, podrá iniciar el procedimiento para la destitución de un juez y entonces actuará como querellante. El procedimiento se iniciará mediante querella dirigida al Tribunal Supremo imputándole al juez conducta inmoral o negligencia en sus deberes judiciales. El Tribunal dará a las partes la oportunidad de ser oídas, en unión a sus testigos y el Tribunal podrá en su discreción mientras se sustancia el procedimiento suspender al Juez de empleo y sueldo. Si el Tribunal considerare que los cargos, o parte de ellos, han sido probados, podrá censurar o suspender al juez querellado, o destituirlo permanentemente de su cargo, según bajo las circunstancias concurrentes, creyere que sea la pena más adecuada.

Los jueces del Tribunal Supremo podrán ser destituidos solamente mediante el procedimiento de residencia establecido por la Constitución del Estado Libre Asociado. (Énfasis suplido).

La Sec. 24 de la Ley Núm. 11 fue objeto de varias enmiendas.[6] En lo particular, destacamos que la Ley Núm. 4 de 22 de abril de 1966 dispuso que le correspondía **al cuerpo del Tribunal Supremo ordenar el archivo de los**

---

[6]Véase, Ley Núm. 107 de 8 de julio de 1960, la Ley Núm. 31 de 11 de junio de 1962, la Ley Núm. 2 de 22 de abril de 1966, Ley Núm. 201 de 23 de julio de 1974.

**cargos que se presentan para la destitución de un juez.**
La última enmienda a la Sec. 24 de la Ley Núm. 11 fue
introducida por la Ley Núm. 201 de 23 de julio de 1974.
Mediante ésta, la Sec. 24 estableció un procedimiento en
el cual se formulaban los cargos ante el Director
Administrativo de la Oficina de Administración de los
Tribunales, quien informaba a este Tribunal. **Entonces,
esta Curia ordenaba el archivo de los cargos o la
investigación correspondiente**. A su vez, el Tribunal
estaba facultado para iniciar una vista informal o
administrativa a los fines pertinentes. Luego de
realizada la investigación, el Tribunal designaba a uno
de sus jueces para la determinación de causa. Éste tenía
la facultad de suspender al juez de empleo y sueldo, y
tomar las medidas que entendiere meritorias.[7] De
determinarse causa, el Tribunal solicitaba que se
radicara la correspondiente querella o solicitud de
separación, brindaba la oportunidad de escuchar a las
partes y  procedía a tomar la medida que considerare
apropiada.

---

[7]Este Tribunal aclaró en In re Marín Báez, 81 D.P.R. 274 (1959) que la participación inicial de un juez en una etapa inicial del procedimiento, al ordenar la investigación de los hechos, examinar el informe correspondiente y ordenar la formulación de una querella si considera que existe causa para ulteriores procedimientos no trasgrede el debido proceso de ley. Ello, pues, no todo contacto previo con la prueba incapacita a un juzgado para dirimir posteriormente los méritos de una controversia. Íd., págs. 282-287.

Además de la Sec. 24 de la Ley Núm. 11, según enmendada, la Regla 13 del Reglamento del Tribunal Supremo, aprobada el 23 de mayo de 1975, 4 L.P.R.A. Ap. I-A, establecía un proceso con relación a las quejas y procedimientos disciplinarios contra abogados y jueces del Tribunal de Primera Instancia. En lo pertinente al proceso disciplinario contra jueces, resalta que las quejas escritas y bajo juramento contra un juez serían anotadas por el Secretario en el registro especial correspondiente, y luego, se elevaría **"a la consideración del Tribunal en Pleno,** por conducto del Juez Presidente".[8] Véase, Regla 13(b). **Ahora bien, la Regla 13 disponía que le correspondía al Tribunal el archivar y sobreseer la queja o dar trámite a ésta.** Si se ordenaba dar trámite a la queja, luego de recibir la correspondiente contestación, el Tribunal podía ordenar al Procurador General presentar la querella o solicitud de separación. Luego de celebrado el proceso correspondiente, el cual incluía la notificación, celebración de vista, confrontación de testigos, examen del informe en los casos remitidos a un Comisionado Especial y objeciones a éste, el Tribunal resolvía lo que en derecho procedía.

Además, en el 1975, este Tribunal adoptó las Reglas para el Trámite de Reunión Informal o Separación del Servicio de Jueces (4 L.P.R.A. Ap. XV). Éstas regían el

---

[8]Se le reconocía al Juez Presidente la facultad de ordenar una investigación preliminar antes de someter el caso al Pleno.

procedimiento administrativo en los casos de solicitud de separación de servicios contra jueces. En estos casos, este Tribunal decidía si sometía la solicitud de separación a un trámite de reunión informal. Durante ese trámite se designaba a un Oidor ante quien se llevaba a cabo una reunión.[9] Luego de celebrada ésta, el Oidor preparaba un informe a este Tribunal con sus recomendaciones para que este Foro emitiera la resolución que atendiera el asunto.[10] En ésta se podía ordenar el archivo de la solicitud de separación del servicio; la investigación conveniente o el procedimiento formal.

Es durante el 1981 que surge, por primera vez, el planteamiento de la necesidad de enmendar la Sec. 24 de la Ley Núm. 11 con el fin de aprobar un reglamento que atendiera exclusivamente los procedimientos disciplinarios y de separación del servicio de los jueces. Es importante destacar que para la etapa de investigación se aconsejó que se rindiera el informe de investigación a este Tribunal para que se procediera con una determinación de causa por uno de los Jueces Asociados. **De ser ésta negativa, el Pleno ordenaría el archivo y sobreseimiento de la solicitud, quedando así terminado el incidente.** Véase, La Judicatura

---

[9]El Oidor podía ser este Foro, un comisionado o una junta de dos o más Comisionados designados por esta Curia.

[10]Si el Oidor era este Tribunal, el informe consistía en la Resolución que se emitiera.

<u>Puertorriqueña</u>, págs. 220-221, Secretariado de la Conferencia Judicial de Puerto Rico, octubre 1981.[11] A tenor con ello, se propuso un reglamento que fue ampliamente discutido en la Octava Sesión Plenaria de la Conferencia Judicial celebrada en el 1981.

El trabajo realizado en 1981 fue analizado y sirvió de base para que en el 1984 se presentara un proyecto de reglamento. Posteriormente, en el 1988 se retomó la discusión en torno al tema de la separación de los jueces en la Conferencia Judicial. Ello dio lugar a que en el 1989 se discutiera el Borrador de Reglamento para atender el procedimiento disciplinario y la separación de servicio, preparado por la Conferencia Judicial. Véase, <u>La Independencia Judicial en Puerto Rico</u>, Secretariado de la Conferencia Judicial, 1988; Borrador de Reglamento para atender el Procedimiento Disciplinario y la Separación del Servicio Tribunal Supremo de Puerto Rico, Conferencia Judicial 1989.

Posteriormente, con la aprobación de la Ley Núm. 64-1992, se delegó en este Tribunal la aprobación de las reglas de procedimiento para el trámite de destitución y separación de jueces. Como resultado, el 25 de septiembre de 1992, este Tribunal, luego de que ponderó el balance de intereses que debía existir en el trámite de quejas y

---

[11]Para el detalle de las recomendaciones propuestas, refiérase a Secretariado de la Conferencia Judicial de Puerto Rico, <u>La Judicatura Puertorriqueña</u>, págs. 163-221, octubre 1981.

de solicitudes de separación contra jueces y las recomendaciones recibidas en las Conferencias Judiciales de 1981, 1988 y 1989, derogó el Trámite de Reunión Informal o de Separación del Servicio de Jueces aprobado en el 1975 y enmendó la Regla 13 del Tribunal Supremo. Además, aprobó las Reglas de procedimiento para acciones disciplinarias y de separación del servicio por razón de salud de jueces del Tribunal de Primera Instancia y del Tribunal de Apelaciones de Puerto Rico. (Reglas de procedimiento de acciones disciplinarias). R. Proc. por Salud Jueces T.P.I y T.A., 131 D.P.R. 630 (1992); además, véase, In re Enmdas. Rs. Proc. Salud T.P.I. y T.A., 154 D.P.R. 643 (2001).

Oportunamente, este Tribunal nombró un Comité para revisar las Reglas de procedimiento de acciones disciplinarias. Entretanto, se aprobó la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201-2003, 4 L.P.R.A. sec. 24, *et seq.* En ésta expresamente se expusieron las medidas disciplinarias a los jueces por incurrir en violaciones a la ley, a los Cánones de Ética Judicial, los Cánones de Ética Profesional, la reglamentación administrativa aplicable, o cuando el juez manifestara negligencia crasa, inhabilidad o incompetencia profesional en el desempeño de sus deberes judiciales. 4 L.P.R.A. sec. 25i. De igual forma, la Ley Núm. 201, *supra*, dispuso las medidas disciplinarias a imponerse, entre las cuales,

destaca la destitución del cargo. 4 L.P.R.A. sec. 25j. A su vez, la nueva Ley de la Judicatura expresamente estableció que el procedimiento disciplinario y de separación de servicio se regiría por lo dispuesto en las reglas que aprobara este Tribunal. 4 L.P.R.A. sec. 25n.

Para julio de 2004, se rindió el informe correspondiente a las reglas de disciplina judicial en la Vigésimo Tercera Conferencia Judicial. Finalmente, el 8 de marzo de 2005 se aprobaron las Reglas de Disciplina Judicial y se derogaron las Reglas de procedimiento de acciones disciplinarias. 4 L.P.R.A. XV-B. En éstas, se aprobó un proceso disciplinario que garantiza a la ciudadanía y a la judicatura la justa y pronta consideración de todo asunto presentado y el debido proceso de ley. Regla 2 de las Reglas de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B R. 2.

De acuerdo con las Reglas de Disciplina, el proceso disciplinario contra un juez o una jueza se inicia con la presentación de una queja juramentada ante la Oficina de Asuntos Legales de la Oficina de Administración de los Tribunales. Regla 5 de las Reglas de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B R. 5. Ésta es evaluada inicialmente para corroborar si cumple con los requisitos de forma. De ser ello así, se informa a la Directora o Director Administrativa(o) de los Tribunales, quien determinará si procede el inicio de la investigación por la Oficina de Asuntos Legales o la persona que se designe. De no

proceder la investigación, se notifica la determinación de archivo de la queja al juez o jueza promovido con copia de ésta y al promovente para que éste último, de entenderlo necesario, solicite una reconsideración. De no solicitar la misma, en el término prescrito, la determinación advendrá final. Regla 6 de las Reglas de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B R. 6.

Ahora bien, de proceder la investigación se rinde un informe. De éste no exponer conducta que amerite una acción disciplinaria, la Directora o Director Administrativa(o) de los Tribunales desestimará la queja, ordenará su archivo y notificará al juez o jueza y a la parte promovente. Éste podrá solicitar una reconsideración ante la Directora o Director Administrativa(o) de los Tribunales. De no solicitar la reconsideración, la determinación de archivar será final. Regla 8 (c) y (d) de las Reglas de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B R. 8(c) y (d).

Cuando la Directora o Director Administrativa(o) de los Tribunales sostiene su determinación inicial sobre archivo de la queja, el promovente puede presentar una solicitud de revisión "ante el Juez Presidente o la Jueza Presidenta", quien podrá confirmar, revocar o devolver el expediente para que se amplíe la investigación. Regla 9

de las Reglas de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B R. 9.[12]

Una vez culminada esta etapa del proceso, si el Juez Presidente o la Jueza Presidenta confirma el archivo de la queja, determinado por la Directora o Director Administrativa(o) de los Tribunales, nuestras Reglas de Disciplina Judicial no contemplan expresamente la finalidad de esa decisión. En ese sentido, existe una laguna de un mecanismo que provea acceso al Pleno de este Tribunal a una parte que no está conforme con esa determinación. Ello, a pesar de lo enunciado expresamente en el Art. V, Sec. 11 de la Constitución de Puerto Rico que faculta a este Tribunal a intervenir en las etapas que pudieran conducir a la destitución de jueces por las causas y mediante el procedimiento que se disponga por ley.

El recuento histórico expuesto refleja la participación activa de todos los componentes de esta Curia durante todas las etapas del proceso. Toda queja juramentada era elevada para la consideración del Tribunal en Pleno, por conducto del Juez Presidente o Jueza Presidenta, y le correspondía a esta Curia archivar y sobreseer la queja o dar trámite a ésta.[13]

---

[12]Un procedimiento similar se establece para los casos en las determinaciones de no causa al presentarse la querella. Véase, Regla 16 de las Reglas de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B R. 16.

[13]Véanse, Sec. 24 de la Ley Núm. 11 de 24 de julio de 1952; Regla 13 del Reglamento del Tribunal Supremo

A pesar de lo anterior, desde que se aprobaron las Reglas de procedimiento de acciones disciplinarias en el 1992 hasta las Reglas de Disciplina Judicial en el 2005 no se dispuso de un sistema para que todos los miembros de este Alto Foro intervinieran en la revisión de una determinación de archivo de la queja. Ello, contrario a las recomendaciones realizadas en observancia de las normas constitucionales discutidas. Véase, La Judicatura Puertorriqueña, op. cit. Nótese que ese proceso de revisión de sobreseimiento se limita al escrutinio de la Directora o Director Administrativa(o) de los Tribunales y del Juez Presidente o Jueza Presidenta. Las Reglas de Disciplina Judicial guardan silencio sobre qué ocurre cuando una parte está inconforme con la decisión del Juez Presidente o Jueza Presidenta. Entendemos que si le corresponde al Pleno de este Tribunal ejercer la potestad de destituir o no a un juez o jueza, no debe cuestionarse que también ostenta la autoridad para dilucidar si procede o no el archivo de una queja contra un miembro del Sistema Judicial. Ello, pues, como hemos expresado en ocasión anterior:

> En nuestra democracia, el Pueblo tiene derecho a pasar juicio fiscalizador sobre todas las acciones y determinaciones del Gobierno, incluyendo las de los tribunales. Debe poderse evaluar la justeza no sólo de aquellos casos en que se encausa disciplinariamente a un juez, sino también de aquellos casos en que se exonera al juez antes de llegar a una determinación de causa probable. Esto es, **el**

aprobada el 23 de mayo de 1975; Reglas para el Trámite de Reunión Informal o Separación del Servicio de Jueces.

> **ciudadano debe poder examinar los *méritos de la decisión de archivar* una queja**… (Énfasis en el original y nuestro). <u>Ortiz v. Dir. Adm. de los Tribunales</u>, 152 D.P.R. 161, 183 (2000).

A su vez, la revisión de los méritos de archivar una queja sirve como baluarte y fortalece la política pública de la Rama Judicial hacia la consecución de la máxima transparencia de sus procesos, accesibilidad, sensibilidad, compromiso a la excelencia administrativa y aumenta la confianza del Pueblo en nuestro Sistema Judicial. Véase, Plan Estratégico de la Rama Judicial de Puerto Rico 2012-2015: Justicia y Servicio.

Ahora bien, la Regla 34 del Reglamento de Disciplina Judicial permite a este Tribunal determinar el trámite de los asuntos no previstos por estas reglas. De tal forma que se **garantice el cumplimiento de los propósitos que inspiran estos procedimientos, los derechos** de la jueza o del juez y **de la parte promovente,** y la sana administración de la justicia. (Énfasis suplido). Regla 34 del Reglamento de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B R. 34.

Entendemos que la revisión de la determinación del Juez Presidente o Jueza Presidenta sobre el archivo de la queja presentada debe ser atendida por el Pleno de este Tribunal. Ésta no puede ser atendida mediante una petición de *certiorari*; pues, como bien señala la Jueza Cancio González, ese recurso no es el apropiado ya que éste se emplea para revisar las determinaciones judiciales de tribunales inferiores. <u>IG Builders *et al.*</u>

v. BBVAPR, 185 D.P.R. 307, 337-338 (2012); Pueblo v. Díaz de León, 176 D.P.R. 913, 917 (2009); García v. Padró, 165 D.P.R. 324, 334 (2005). Sin embargo, ello no es óbice para que este Tribunal no pueda atender el planteamiento ante nuestra consideración y acogerlo como un recurso de revisión. Máxime cuando se trata de un asunto de la envergadura de la disciplina judicial. Por tal razón, entendemos que en estos casos la facultad de revisión es una inherente a este Tribunal debido al poder esencial que posee esta Curia para disciplinar a los miembros del Sistema Judicial. Ese proceso de revisión debe ser uno diligente que permita al promovente cuestionar la determinación que el Juez Presidente o Jueza Presidenta realice confirmando el archivo de la queja presentada y, a su vez, se conceda al promovido la oportunidad de defenderse. Precisamos, que tal revisión debe ser presentada dentro de los diez días siguientes a la notificación de la decisión del Juez Presidente o Jueza Presidenta.[14] De sostenerse la determinación de archivo de la queja contra el juez o jueza, la decisión advendrá final y firme, y la revisión formará parte del expediente de la queja desestimada, por lo que le aplicarán las

---

[14]A estos efectos, notamos que los términos de revisión de las determinaciones de los procesos disciplinarios son de 10 días. Véase, Regla 8 (d), 9 (b) y 16(d) de las Reglas de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B R. 8 (d), 9(b) y 16(d).

disposiciones contenidas en la Regla 11 de las Reglas de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B R. 11.[15]

Al así proceder, se viabiliza la facultad constitucional que ostentan los miembros de este Tribunal en cuanto a si procede o no la destitución de un juez. En la medida que se cuestione la decisión de archivar una queja contra un juez o jueza de nuestro sistema de justicia, resulta un deber inherente de todos los integrantes de esta Curia considerar el asunto presentado. Tal actuación, afianza la confianza en los procesos de destitución aquí enmarcados.

### III

Conforme con lo anterior, procedemos a evaluar la revisión presentada por los quejosos.

Los quejosos aducen que, luego del mandato emitido por este Tribunal para permitir la presentación de una reconvención por dolo contractual, la representación legal de la parte contraria argumentó que no procedía acatar el mandato emitido por esta Curia. En ese sentido, la parte contraria señaló al Tribunal de Primera Instancia que el asunto sobre la prescripción no estuvo ante la consideración de este Tribunal al emitir el mandato que da lugar a la controversia de autos. Los

---

[15]Recordemos que tanto el informe de investigación como sus anejos están disponibles a escrutinio público desde que se notifica la determinación del Director o Directora de archivar la queja. Véase, Regla 10 de las Reglas de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B R. 10; Ortiz v. Dir. Adm. de los Tribunales, 152 D.P.R. 161 (2000).

quejosos señalan que la Jueza Cancio González debió acatar el mandato emitido. Advierten que ésta expresamente señaló que:

> Coincidimos con la posición de FirstBank a los efectos de que el asunto de la prescripción de la causa de acción presentada en la Reconvención no estaba propiamente planteada ante el Tribunal Supremo. Esto se manifiesta sin duda debido a que ni tan siquiera al momento en el que el caso fuera presentado ante el Tribunal Supremo, se había aceptado la radicación de la referida Reconvención. Por tanto, dicho Tribunal no podía tener ante sí la controversia de si contra la misma procedía la defensa afirmativa de prescripción. En conclusión, lo manifestado por el Tribunal Supremo en cuanto a la prescripción no ha sentado precedente en este caso ya que no tuvo ante sí las controversias que se están resolviendo en esta Sentencia.[16]

Por tanto, los quejosos sostienen que no procede el archivo de la queja presentada porque la Jueza Cancio González deliberadamente desacató el mandato de este Tribunal. Máxime cuando las expresiones de este Tribunal establecieron que la fecha argüida por FirstBank no podía ser considerada para computar el término prescriptivo.

Por su parte, la Jueza Cancio González destaca que mediante la queja disciplinaria interpuesta por los quejosos se pretende impugnar determinaciones judiciales que fueron adjudicadas por ésta. Sobre este particular, enfatiza que los quejosos cuestionan que no cumplió con el mandato del Tribunal Supremo, denegó una solicitud de prórroga e impuso sanciones, descalificó a un bufete, y

---

[16]Véase, Sentencia Parcial del Tribunal de Primera Instancia, nota al calce número 1.

permitió la representación legal de los demandados.[17] Por tanto, sostiene que la queja no cumple con la Regla 3 de las Reglas de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B R. 3. Indica que en esta ocasión sólo aducen que no cumplió con el mandato de este Tribunal, por lo que estima que un caso aislado no resulta en prueba clara, robusta y convincente para establecer la parcialidad de ésta. De igual manera, la Oficina de Administración de los Tribunales sostiene que lo acaecido fue un error jurídico que no conlleva una acción disciplinaria.

IV

A.

Al estudiar el expediente de autos, surge con claridad que este Tribunal atendió la actuación del foro de instancia de no autorizar la presentación de cierta reconvención por entender que resultaría en perjuicio indebido por dilación. Esa determinación del foro primario fue confirmada por el Tribunal de Apelaciones y revocada por esta Curia (CC-2009-200).[18] Al dilucidar la controversia, este Tribunal evaluó distintos factores para auscultar si permitir presentar la reconvención causaría un perjuicio indebido a la parte. Para ello,

---

[17]De hecho expone que los quejosos presentaron varios recursos de revisión ante el foro apelativo intermedio. En todos se confirmó a la Jueza Cancio González, excepto en cuanto a que no siguió el mandato del Tribunal Supremo.

[18]Es importante resaltar que inicialmente el foro primario permitió la presentación de la reconvención, pero luego reconsideró esa decisión.

determinamos que al momento en que se solicitó presentar la reconvención no era tardío, no se había comenzado el descubrimiento de prueba, y tampoco se había celebrado la vista con antelación al juicio. Por tanto, el caso no estaba en una etapa avanzada de los procedimientos. Igualmente, estimamos que la alegación que da lugar a la reconvención fue escuetamente señalada en las alegaciones responsivas originales, por lo que no validamos los argumentos de mala fe traídos ante nuestra consideración. Tampoco encontramos que permitir presentar la reconvención ocasionara algún perjuicio indebido a FirstBank.

En lo particular, atendimos el argumento de que no procedía la reconvención omitida por estar prescrita la acción de impugnación del contrato por vicio en el consentimiento, ya que el término prescriptivo transcurrió. A estos efectos, determinamos que la reclamación de dolo no es con relación al contrato principal sino al accesorio, por lo que la reclamación de dolo no es al momento de la contratación durante el 1999, sino posteriormente en la consumación del contrato en el 2004. A su vez, la acción se retrotrae a la fecha de la contestación original, por lo que la acción fue ejercida oportunamente y no estaba prescrita. Así, aceptamos la contestación enmendada a la demanda y la reconvención jurada. Devolvimos el caso al Tribunal de Primera

Instancia para que se continuaran los procedimientos conforme con lo resuelto.

A base de estas determinaciones, la Jueza Cancio González recibió la reconvención. No obstante, FirstBank solicitó la desestimación de ésta a base de las alegaciones presentadas en la reconvención. En lo pertinente, levantó la defensa de prescripción. Los quejosos se opusieron. Al así hacerlo, sostuvieron que el término prescriptivo comenzó a decursar cuando FirstBank ejercitó su derecho y no desde la firma del contrato. De igual forma, expuso nuestros pronunciamientos en el caso CC-2009-200. Por su parte, FirstBank argumentó que la alegación de la reconvención es de dolo por consentimiento al firmar el contrato accesorio, por lo que estaba prescrita.

Al atender la moción de desestimación, la jueza expresó que la controversia atendida por este Tribunal era a los efectos de si la reconvención debía ser permitida. La juzgadora entendió que, a base de las alegaciones contenidas **en la reconvención presentada**, la causa de acción estaba prescrita. Recalcó que en ésta se alegó vicio en el consentimiento en el origen del contrato y no en la consumación. Por tanto, concluyó que el término prescriptivo comenzó a decursar desde la firma del contrato.

Tal actuación fue revisada por el Tribunal de Apelaciones. Éste concluyó que este Tribunal determinó

que la reconvención no estaba prescrita y la Jueza Cancio González resolvió contrario a nuestros pronunciamientos. Por tanto, revocó al foro primario por no observar el mandato de este Tribunal.

B.

No debe existir duda en cuanto a que la corrección jurídica de una determinación es un asunto a ser revisado mediante los recursos correspondientes. In re Hon. Díaz García, T.P.I., 158 D.P.R. 549 (2003). De igual forma, los errores de derecho no constituyen un fundamento adecuado para disciplinar a un juez. In re Sierra Enríquez, 185 D.P.R. 830, 849 (2012). Claro está, ello siempre y cuando el error no sea de tal naturaleza que pueda considerarse como una violación al Código de Ética Judicial, que amerite la imposición de sanciones disciplinarias. Íd., pág. 558. Es decir, sólo cuando el error cometido constituyó un abuso intencional de discreción o refleje conducta impropia o favoritismo del juzgador hacia una parte, es que procederá la correspondiente intervención de este Tribunal para imponer una sanción disciplinaria. Íd., pág. 559. Véase, además, In re González Acevedo, 165 D.P.R. 81, 95-96 (2005).

En lo pertinente, el mandato es el medio por el cual un tribunal de superior jerarquía notifica a uno de inferior jerarquía la sentencia objeto de revisión y ordena el cumplimiento con lo dispuesto. I. Rivera

García, *Diccionario de términos jurídicos*, 2da ed. rev., New Hampshire, Ed. Equity Publishing Corporation, 1989, pág. 162. Así, el tribunal inferior, ejecuta la sentencia como fue emitida por el tribunal de superior jerarquía. Sin embargo, ello no vulnera la discreción del foro inferior para considerar asuntos que no fueron expresa o implícitamente decididos por el tribunal que emitió el mandato. Claro está, ello no implica que los tribunales inferiores puedan actuar fuera de la orden dictada. Véase, Mejías v. Carrasquillo, 185 D.P.R. 288, 300-303 (2012) citando a 18 *Moore's Federal Practice 3d* Sec. 134.23(4), págs. 134-161 (2001).

C.

Al examinar el expediente ante nuestra consideración, concluimos que las actuaciones de la Jueza Cancio González no constituyeron un abuso intencional de discreción y tampoco reflejan conducta impropia o favoritismo de su parte hacia algún litigante. En esencia, la Jueza Cancio González permitió la presentación de la reconvención como surge del mandato emitido por este Tribunal. No obstante, ante una moción de desestimación contra la reconvención y en aras de resolver ésta, la Jueza Cancio González interpretó incorrectamente lo resuelto por este Tribunal. Ésta limitó el alcance de nuestras expresiones. Entendió que la reconvención presentada alegó solamente dolo en el origen de la contratación y no en el cumplimiento de la

obligación. Al así actuar, erró al interpretar las expresiones de este Tribunal en el mandato emitido. Allí, dispusimos que la reconvención se retrotrae a la fecha de la contestación original de la demanda y que el dolo se manifestó en el 2004, por lo que la reclamación de dolo no está prescrita.

La actuación de la Jueza Cancio González no constituye evidencia suficiente que denote un abuso intencional de su discreción. Por tanto, concluimos que no procede un procedimiento disciplinario en su contra.

V

Por las razones discutidas, confirmamos la determinación de archivar la queja presentada contra la Hon. Iris L. Cancio González. Se ordena el archivo definitivo de la queja presentada.

Se dictará Sentencia de conformidad.

LUIS F. ESTRELLA MARTÍNEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Hon. Iris L. Cancio González
    Juez Superior            CC-2013-524     Certiorari


## SENTENCIA

San Juan, Puerto Rico, a 18 de febrero de 2014.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se confirma la determinación de archivar la queja presentada contra la Hon. Iris L. Cancio González. Se ordena el archivo definitivo de la queja presentada.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton está inhibido. La Jueza Asociada señora Fiol Matta no interviene. La Juez Asociada señor Rodríguez Rodríguez no intervino.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo